

**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

| | | |
|---|---|---|
| In re: | * | Case No.   18-25597 TJC |
| TSC Dorsey Run Road- Jessup, LLC | * | Chapter    11 |
| Debtor | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OF DECISION**

Merrill Cohen, serving as the Plan Administrator, Chapter 7 Trustee, or Chapter 11

Trustee in the bankruptcy cases of seven related debtors, brings this motion to approve a

settlement with the AN&J Family Trust (the "Trust"), which owns all or substantially all of the

seven debtors, and S. Bruce Jaffe, who is the trustee of the Trust and managed the debtors before

Mr. Cohen's appointment.  The settlement resolves claims that the Trust improperly withdrew

funds from the debtor-in-possession ("DIP") accounts of six of the debtors, as determined by G.

Richard Gray, the court appointed examiner (the "Examiner").  The settlement proposes to

satisfy the claims from the Trust's 100% equity ownership in the debtor, TSC Dorsey Run Road

– Jessup, LLC (the "Debtor"), which is the seventh related debtor.

Under the Debtor's confirmed plan, all parties agreed that the net proceeds from the sale

of the Debtor's real property after payment of all claims (*i.e*., the Trust's equity) would be held

by Mr. Cohen, the Debtor's then Chapter 11 Trustee and now Plan Administrator, until he

investigated the claims identified by the Examiner and obtained satisfaction of those claims.

1

ECF 143.  The plan contemplated that the Trust's equity in the Debtor would be used to satisfy those claims.  The settlement achieves this result.  Mr. Cohen will transfer the funds he holds as the Trust's equity ownership in the Debtor to the six debtors to satisfy the claims they have against the Trust for the improper DIP account withdrawals.

Capital Bank, N.A., (the "Bank"), a creditor of the Trust, objects to the settlement.  ECF 161.  It obtained a charging order against the Trust's economic interest in the Debtor and contends the funds must be disbursed to it on account of the Trust's interest in the Debtor before the funds can be used to satisfy other claims.  The Court disagrees.  The charging order gives the Bank no greater rights in the Trust's economic interest in the Debtor than the Trust holds.  The Bank obtained the charging order after the Debtor's plan was confirmed and after the Trust entered into the settlement.  The Debtor's plan and the settlement agreement altered the Trust's right to receive a distribution from the Debtor, and established Mr. Cohen's right to use the funds to satisfy the claims the six debtors hold against the Trust before any distribution is made to the Trust by the Debtor.

## Findings of Fact

### *The Debtor and its Initial Proposed Plan.*

On November 28, 2018, the Debtor, a Maryland limited liability company managed by Mr. Jaffe, filed for Chapter 11 relief.  The Trust owns 100% of the member interests in the Debtor.  ECF 1 p. 25.

The Debtor filed as a single asset real estate company as defined by 11 U.S.C. §101(51B).  It owned two related parcels of real property located at 7869 Dorsey Run Road, Jessup, Maryland, referred to as the Southeast Parcel and the Northwest Parcel.  ECF 61, 72.  From early in the case, the Debtor stated that the value of the real estate exceeded the amount of

all claims against it. Almost immediately after the filing, the Debtor sought and obtained authority to retain a broker to market and sell the real estate. ECF 10, 18.

The Debtor filed its initial disclosure statement and plan on March 22, 2019. ECF 38 and 39. The plan provided that the Debtor would sell its real property, pay its secured creditor CFG Community Bank ("CFG") and all other claims in full, and distribute the net proceeds to the Trust as the equity holder. *See generally*, *Id*. at Article V, and §§7.2, §7.3. If the property was not sold by December 31, 2019, it would be sold through an auction. *Id*. at §7.3.2.

The court set the disclosure statement for hearing, but approval of the disclosure statement and confirmation of the plan were stayed once the United States Trustee ("UST") filed a motion to appoint a Chapter 11 trustee, or in the alternative, an examiner, *see* ECF 59 and 63, as discussed further below.

***The Appointment of the Examiner and the Examiner's Report.***

Although the settlement involves seven related debtor entities, in actuality the Debtor is one of eleven companies, all managed by Mr. Jaffe and owned either entirely or substantially by the Trust, that have filed for bankruptcy relief in this court.[1] During a number of the related party cases, substantial questions arose about related party receivables and liabilities, referred to as "due to/due from" accounts, as well as other internal financial transactions by or among the related entities.

---

[1] Other than the Debtor, the cases are: *In re College Park Invs., LLC*, Case No. 17-22678 (filed 9/22/17); *In re Stein Props., Inc.,* Case No. 17-22680 (filed 9/22/17); *In re TSC/JMJ Snowden River South, LLC*, Case No. 17-24150 (filed 10/23/17); *In re TSC/Nesters Landing, LLC*, Case No. 17-25913 (filed 11/28/17); *In re TSC/Green Acres Road*, LLC, Case No. 17-25912 (filed 11/28/17); *In re Chapeldale Props., LLC*, Case No. 17-26995 (filed 12/21/17); *In re TSC/Mayfield, LLC,* Case No. 18-13611 (filed 3/19/18); *U.S. Financial Capital, Inc.*, Case No. 18-14018) (filed 3/29/18); *In re TSC/Bayview Drive, LLC*, Case No. 18-19487 (filed 7/18/18); and *TSC Snowden River, North, LLC*, Case No. 18-25519) (filed 11/26/18).

On February 7, 2019, the Bank, later joined by City First Bank of D.C., N.A., filed a motion requesting authority under Bankruptcy Rule 2004 to investigate the financial transactions of eight of the related debtor entities.  ECF 114, 130 in Case No. 18-14018.[2]  The Bank alleged that the debtors' financial disclosures were inadequate, inconsistent, or simply wrong relative to inter-entity transactions, and that a determination needed to be made about the collectability of the various amounts due among the entities.  It asserted the debtors' finances were a tangled web of mostly undocumented loans, advances, transfers and payments for the benefit of various related real estate ventures owned by the Trust or Mr. Jaffe, including debtors and nondebtors.  It also alleged the debtors' financial disclosures were lacking, pointing out, as an example, that although it is the largest unsecured creditor in the case of *U.S. Financial Capital, Inc.*, Case No. 18-14018, it is not listed on the schedules.  The court granted the request, authorizing the Bank to conduct a broad investigation into the financial affairs of the debtor entities.  ECF 143 in Case No. 18-14018.[3]

Almost immediately, based on the allegations made by the Bank and other information, the UST filed a motion to direct the appointment of a chapter 11 trustee or, alternatively, to appoint an examiner in the Debtor's case, ECF 44, and in two related cases: U.S. Financial Capital, Inc. (ECF 147, Case No. 18-14018) and TSC Snowden River, North, LLC (ECF 51, Case No. 18-25519).[4]  The motion raised a litany of concerns relating to, among other things, the debtors' operations and financial management, their use and commingling of funds, their inter-entity financial transactions, their change in fund management procedures during cases without

---

[2] The motions were filed in Case Nos. 18-14018 and 18-25519.
[3] The order was also entered in Case Nos. 18-25519, 17-22678, 18-13611, 17-25913, 17-25912 and 17-26995.
[4] In each of the eight related cases other than the three that were the subject of the motion, plans of reorganization or liquidation had been confirmed.

notice to creditors or the court, and their lack of disclosure and transparency about the foregoing.

*Id.*

The three debtors who were the subject of the UST motion, along with Mr. Jaffe, the Trust and other related entities, initially opposed the motion. ECF 50 and 51. After a hearing, however, the related debtors consented to the appointment of an examiner to investigate their financial affairs. ECF 64.

On May 24, 2019, the court approved the appointment of the Examiner. ECF 69. On October 7, 2019, the Examiner filed a thorough report (the "Examiner's Report") finding, as pertinent here:

> The Jaffe Related Entities have been more than cavalier with respect to the DIP accounts. Twenty-nine (29) transfers from DIP accounts for six (6) of the twelve (12) entities were made in the period from December of 2018 until July of 2019 totaling $781,887.90. Moreover, in many instances these transfers have never been reported in the monthly or quarterly Operating Reports, as the case may be. We have received no explanation for these transfers, which appear to be contrary to Section 549 of the Bankruptcy Code. The following Jaffe Related Entities are implicated:
> - Stein Properties, Inc.
> - College Park Investments, LLC
> - U.S. Financial Capital, Inc.
> - TSC/Bayview Drive, LLC
> - TSC/Mayfield, LLC
> - F&S Associates Limited Partnership

ECF 102 at 10-11.[5] The six entities listed above are referred to herein as the "Six Related Entities." The Examiner determined that some of the transfers out of the DIP accounts of the Six Related Entities had been repaid, but a substantial amount had not been repaid, and a balance remained, as follows:

---

[5] The Examiner made other findings and raised other potential claims against the Trust or related entities. Those claims are not being released and are not addressed here.

| Debtor | Amount Removed from DIP Acct. | Amount Returned | Balance |
|---|---|---|---|
| Stein Properties, Inc. | $205,878 | $124,041 | $81,837 |
| TSC/Mayfield, LLC | $223,204.95 | $0.00 | $223,204.95 |
| U.S. Financial Capital, Inc. | $232,114.95 | $147,004.95 | $85,110 |
| TSC/Bayview Drive, LLC | $21,300 | $550 | $20,750 |
| F&S Associates, LP | $24,800 | $0.00 | $24,800 |
| College Park Inv. LLC | $75,510.00 | $24,770.47 | $50,739.53 |
| TOTAL | $782,807.90 | $296,366.42 | $486,441.48 |

***The Appointment of the Chapter 11 Trustee and the Debtor's Confirmed Plan.***

While the Examiner was conducting his investigation, the Debtor filed a motion to sell

the Southeast Parcel for $1,700,000, ECF 61, and later filed a motion to sell the Northwest Parcel

for $1,700,000. ECF 72. The court granted the motions, allowing the Debtor to close on the

sales and pay all costs and secured debt from the sale proceeds, but required the Debtor to

deposit all net proceeds into the DIP account subject to further court order. ECF 76 and 83.

There was no dispute that the sale process had been proper, and the proposed sales were arms-

length transactions that constituted the highest price for the real property. On October 2, 2019,

the Debtor filed a report of sale on the Southeast Parcel, ECF 99, but the sale remained open on

the Northwest Parcel.

Almost immediately after the issuance of the Examiner's Report, the UST filed a second

motion to direct the appointment of a Chapter 11 trustee in a number of cases based on the

Examiner's findings. ECF 206. The Debtor recognized that the Examiner's Report raised

substantial concerns that needed to be addressed. It consented to the appointment of a Chapter

11 trustee and, on October 21, 2019, Mr. Cohen was approved as the Chapter 11 trustee. ECF

123. Debtor also requested that the court allow it to go forward with confirmation of the plan to

\allow the sale of the Northwest Parcel to close before the December 31 auction deadline and to

take advantage of 11 U.S.C. §1146 by saving the transfer taxes on the sale, estimated to be

between $25,000 and $30,000.  ECF 103.  The Debtor stated:

> 12. The Debtor recognizes that as a result of the Examiner's report *[the Trust] may
> be required to pay some significant portion of the proceeds [from the sale of
> Debtor's property] for the benefit of creditors in other cases.* Accordingly, the
> equity holder desires to maximize the amount available by eliminating transfer tax
> if at all possible.
>
> 13. *The Debtor and the equity holder are prepared to consent to a third party
> holding the bulk of the proceeds.*

*Id*. at p. 3 (emphasis added).

 Mr. Cohen, as Chapter 11 trustee, did not object to the plan to the extent it allowed the

sale to be completed so the estate could realize the benefit of §1146.  He made clear, however,

that he should be put in control of the net proceeds that would otherwise be distributable to the

Trust as equity holder:

> In particular, the Trustee notes that an Examiner's Report submitted in the case
> raises concerns that claims of certain non-Debtor entities and individuals may
> require payment *prior to distributions to equity holders of the Debtor*. The Trustee
> should remain in possession of all sale proceeds pending completion of his
> investigation whether there are any such claims requiring payment.

ECF 127 at ¶6 (emphasis added).  Mr. Cohen also insisted he retain control of the funds to

ensure they were used for this purpose and that he be given the authority to effectuate the

plan as understood by the parties:

> The Trustee also submits that the Plan should be amended to permit the Trustee to
> serve as the plan administrator (the "Plan Administrator"), vested with the rights
> and duties necessary to administer and a carry out the purposes of the Plan….

*Id*. at ¶ 7.

The Debtor, the Trust, Mr. Jaffe, Mr. Cohen as Chapter 11 trustee, and the UST, agreed

to plan amendments that would accomplish the two objectives: (1) allow the sale to be made

under the plan prior to the December 31 deadline and to realize the benefit provided by §1146,

thus maximizing the recovery to the estate; and (2) maintain the net proceeds under the control of Mr. Cohen to be available to satisfy claims raised in the Examiner's Report, as appropriate.  This was accomplished several ways.  First, the court entered an order modifying the approval of the sale of the Northwest Parcel to provide, among other things:

> ORDERED, the Debtor is authorized, upon closing of the sale, to pay all costs of closing as well as all of the valid secured claims held by CFG Community Bank and Howard County, Maryland. All of the remaining net sale proceeds, if any, shall be held by Merrill Cohen, in his capacity as Trustee or Plan Administrator and shall not be used for any other purpose without prior Order of the Court[.]

ECF 139 at 2.

In addition, the plan was amended to add the following provision to the section governing Delivery of Distributions: "*ANY FUNDS OTHERWISE PAYABLE TO EQUITY HOLDERS ARE TO BE HELD BY A CHAPTER 11 TRUSTEE TO BE APPOINTED HEREIN.*"  ECF 110 at §8.3 (emphasis in original).   Further, the parties understood a Chapter 11 trustee could not continue to serve in that capacity post-confirmation.  They agreed that, under the confirmed plan, Mr. Cohen, as Chapter 11 Trustee, would become the Plan Administrator authorized to hold the funds, investigate the claims against the Trust raised by the Examiner, and satisfy those claims out of the net sale proceeds from the sale of the Debtor's real property.  The role of the Plan Administrator was included in the confirmation order.  ECF 143 at p. 11.  It expressly provides that "Merrill Cohen shall serve as the [Plan Administrator], vested with the rights and duties necessary to administer and a carry out the purposes of the Plan."  *Id*.  Finally, the confirmation order provided that the Plan Administrator would retain all sales proceeds "pending [his] determinations concerning appropriate distributions in the bankruptcy case." *Id*.  The Trust accepted the plan.

The sale closed pursuant to the confirmed plan, and Mr. Cohen received the net proceeds from both sales. As Plan Administrator, he has paid all estate claims and, in accordance with the confirmed plan, holds the net remaining proceeds (the "Plan Funds") for resolution of claims raised by the Examiner.

***The Settlement.***

Mr. Cohen, as Plan Administrator of the Debtor, filed the motion for approval of the settlement with the Trust and Mr. Jaffe on December 2, 2019.[6]  Under the settlement, Mr. Cohen, as Plan Administrator in the Debtor's case, will pay $486,441.48 of the Plan Funds to the Six Related Entities. The payments will satisfy the Six Related Entities' claims against the Trust for recovery of the DIP account funds in the amounts detailed above. No other claims are being released.

Mr. Cohen, in his capacity as Chapter 7 Trustee or Chapter 11 Trustee of the Six Related Entities, also entered into a separate settlement agreement with the Trust in each of the Six Related Entities' cases. The agreements provide that the funds he pays to each entity from the Plan Funds will resolve that entity's claims against the Trust for recovery of the DIP account funds.

***The Bank's Charging Order***.

On January 10, 2020, the Bank obtained a charging order on the Trust's economic interest in the debtor, after the Plan was confirmed, the settlement agreements were signed, and the settlement motion was filed, but prior to the court approving the settlement. The charging

---

[6] In addition to the Debtor's case, the motion was filed in Stein Properties, Inc. (ECF 189 in Case No. 17-22680), TSC/Mayfield, LLC (Case No. 18-13611), U.S. Financial Capital, Inc. (Case No. 18-14018), TSC/Bayview Drive, LLC (Case No. 18-19487), F&S Assoc. LP (Case No. 19-14947), and College Park Investments, LLC (Case No. 17-22678).

order provides that "under Maryland Rules 2-649 and 2-651 and Maryland Annotated Code, Corporation and Associations § 4A-607, it is …"

> ORDERED, that the economic interests of the [Trust] in the limited liability company of [the Debtor], be charged with the payment of the judgment rendered in this action in favor of the [Bank] in the amount of $1,183,115.69 plus accrued interest thereon, and it is further

> ORDERED, that the [Bank's] Request for other Ancillary Relief in Aid of Execution of Judgment shall be, and the same is hereby, Denied.

ECF 184 at p. 15.

The case-specific facts for each of the Six Related Entities follows:

***Stein Properties, Inc*. ("*Stein Properties"), Case No. 17-22680** *(all docket references in this section are to Case No. 17-22680).*

On September 22, 2017, Stein Properties filed for Chapter 11 relief as a single asset real estate entity. Mr. Jaffe signed the petition as president and the Trust was listed as 100% equity shareholder. ECF 30 at 27 of 28. In the Examiner's Report, it was determined that Stein Properties transferred $205,878 from its DIP account without court authority to one or more related entities. The Examiner also determined that $124,041 was repaid to the DIP Account, leaving an unpaid balance of $81,837. The settlement repays this amount in full.

In response to the Examiner's Report, the UST filed a motion to convert the case to Chapter 7 on October 22, 2019. ECF 175. On November 7, 2019, the Court entered a consent order converting the case to Chapter 7. ECF 183. Mr. Cohen was appointed the Chapter 7 Trustee and continues to serve in that capacity.

***TSC Mayfield, LLC ("Mayfield"), Case No. 18-13611*** *(all docket references in this section are to Case No. 18-13611).*

On March 19, 2018, Mayfield filed for Chapter 11 relief as a single asset real estate entity. Mr. Jaffe signed the petition as manager of Mayfield, and the Trust was listed as 100% equity holder. ECF 1 at 30 of 35. In the Examiner's Report, it was determined that during the case Mayfield transferred $223,084.95 from its DIP account, without court authority, to one or more related entities. Mayfield has not repaid any amount to the DIP Account, leaving an unpaid balance of $223,084.95. The settlement repays this amount in full.

In response to the Examiner's Report, on October 21, 2019, the UST filed a motion to convert the case to Chapter 7. ECF 118. On November 26, 2019, the court entered a consent order converting the Mayfield case to Chapter 7. ECF 126. Mr. Cohen was appointed the Chapter 7 Trustee and continues to serve in that capacity.

**U.S. Financial Capital, Inc ("USF"), Case No. 18-14018** *(all docket references in this section are to Case No. 18-14018).*

On March 27, 2018, USF filed for Chapter 11 relief. Mr. Ronald Talbert signed the petition as chief operating officer of USF. Mr. Jaffe serves as President and, although there were no equity holders listed in the schedules, it is not disputed that the Trust owns 100% of USF's shares. The resolution of the board of directors authorizing the filing was signed by Mr. Jaffe as President. ECF 6. In the Examiner's Report, it was determined that USF transferred $232,114.95 from its DIP account, without court authority, to one or more related entities. The Examiner also determined that $147,004.95 was repaid to the DIP Account, leaving an unpaid balance of $85,110. The settlement repays this amount in full.

In response to the Examiner's Report, on October 21, 2019, the UST filed a motion to appoint a Chapter 11 trustee. ECF 206. On November 6, 2019, the court entered a consent

order directing the appointment of a Chapter 11 trustee. ECF 224. Mr. Cohen was appointed the Chapter 11 Trustee on November 12, 2019, and continues to serve in that capacity.

**TSC/Bayview Drive, LLC ("Bayview"), Case No. 18-19487** *(all docket references in this section are to Case No. 18-19487).*

On July 18, 2018, Bayview filed for Chapter 11 relief as a single asset real estate entity. Mr. Jaffe signed the petition as manager of Bayview and the Trust was listed as 100% equity owner. ECF 1 at 25 of 28. In the Examiner's Report, it was determined that during the case Bayview transferred $21,300 from its DIP account, without court authority, to one or more related entities. The Examiner also determined that $550 was repaid to the DIP Account, leaving an unpaid balance of $20,750. The settlement repays this amount in full.

In response to the Examiner's Report, on October 21, 2019, the UST filed a motion to convert the case to Chapter 7. ECF 77. On November 25, 2019, the court entered a consent order converting the Mayfield case to Chapter 7. ECF 86. Mr. Cohen was appointed the Chapter 7 Trustee and continues to serve in that capacity.

**F & S Associates, LP ("F&S"), Case No. 19-14947** *(all docket references in this section are to Case No. 19-14947).*

On April 11, 2019, F&S filed for Chapter 11 relief as a single asset real estate entity. Mr. Jaffe signed the petition as manager of TSC/9190 Red Branch Road LLC, the general partner of F&S, and the Trust was listed as 99% equity holder of F&S with TSC/9190 Red Branch Road LLC holding the remaining 1% interest. ECF 1 at 20 of 25. In the Examiner's Report, it was determined that during the case F&S transferred $24,800 from its DIP account, without court authority, to one or more related entities. F&S has not repaid any amount to the DIP Account, leaving an unpaid balance of $24,800. The settlement repays this amount in full.

12

In response to the Examiner's Report, on October 18, 2019, the UST filed a motion to appoint a Chapter 11 trustee. ECF 140. On November 5, 2019, the Court entered a consent order directing the appointment of a Chapter 11 trustee. ECF 153. Mr. Cohen was appointed the Chapter 11 Trustee, and continues to serve in that capacity. ECF 156.

**College Park Investments, LLC ("CPI") Case No. 17-22678** *(all docket references in this section are to Case No. 17-22678).*

On September 22, 2017, CPI filed for Chapter 11 relief as a single asset real estate entity. Mr. Jaffe signed the petition as manager of CPI, and the Trust was listed as 100% equity holder. ECF 1-1. In the Examiner's Report, it was determined that during the case CPI transferred $75,510 from its DIP account without court authority to one or more related. The Examiner also determined that $24,770.47 was repaid to the DIP Account, leaving an unpaid balance of $50,739.53. The settlement repays this amount in full.

In response to the Examiner's Report, on October 22, 2019, the United States Trustee filed a motion to convert the case to Chapter 7. ECF 141. On November 8, 2019, Court entered a consent order converting the case to Chapter 7. ECF 149. Mr. Cohen was appointed the Chapter 7 Trustee and continues to serve in that capacity.

### Conclusions of Law

The Bank contends that under Maryland law and by operation of the plan, the Plan Administrator must distribute the Plan Funds to it, and cannot use the funds to make the payments to the Six Related Entities pursuant to the settlement. It contends that in essence, the Plan Funds are being distributed first from the Debtor to the Trust, and then from the Trust to the Six Related Entities. It argues that the charging order requires the distribution must be made to it, rather than to the Trust. In doing so, the Bank misconstrues the plan.

Maryland distinguishes between the economic and noneconomic interests held by a member in an LLC. Md. Code Ann., Corps. & Ass'ns § 4A-101(n).[7] Generally speaking, only the economic interest in an LLC may be assigned, and it may be assigned in whole or in part. Md. Code Ann., Corps. & Ass'ns § 4A-603(a). The assignment does not dissolve the LLC or give the assignee any rights of a member. *Id.* § 4A-603(b).

On application by a creditor holding a judgment against a member, a court "may charge the economic interest of the debtor in the limited liability company for the unsatisfied amount of the debt." Md. Code Ann., Corps. & Ass'ns § 4A-607(b)(1). The charging order,

> … constitutes a lien on the economic interest of the debtor in the limited liability company and requires the limited liability company to pay over to the creditor only any distributions that would otherwise be payable to the debtor whose economic interest is charged.

Md. Code Ann., Corps. & Ass'ns § 4A-607(c)(1).

The dispute between the parties is whether the Plan Funds are "distributions that would otherwise be payable to" the Trust under Md. Code Ann., Corps. & Ass'ns § 4A-607(c)(1). The Bank is entitled "only" to those amounts. *Id.* As the net proceeds that remain after the liquidation of the Debtor's assets and payment of liabilities, the Plan Funds ordinarily would be distributed to the Trust under Maryland law. The Debtor's confirmed plan, however, altered the

---

[7] (i) "Economic interest" means a member's share of the profits and losses of a limited liability company and the right to receive distributions from a limited liability company.

(o) "Noneconomic interest" means all of the rights of a member in a limited liability company other than the member's economic interest, including, unless otherwise agreed, the member's right to:
(1) Inspect the books and records of the limited liability company;
(2) Participate in the management of and vote on matters coming before the limited liability company; and
(3) Act as an agent of the limited liability company.

Md. Code Ann., Corps. & Ass'ns § 4A-101(i);(o).

Trust's right to receive the distribution and provides for the use of the funds for the settlement. The question turns on an understanding of the Debtor's plan.

The Debtor's original plan, filed on March 22, 2019, was straightforward. ECF 39. The Debtor would sell its real estate by December 31, 2019, or it would sell the property through an auction. *Id*. at §7.3.2. All creditors would be paid by the sales proceeds, and the remaining proceeds would be distributed to the Trust as the equity holder. *See generally*, *Id*. at Article V, and Article §7.2; §7.3.

The plan's treatment of the Trust's equity interest changed substantially in response to the Examiner's Report. As described above, the Examiner concluded that the Six Related Entities made improper withdrawals from their DIP accounts in a net total amount of $486,441.48. ECF 102. As a result, the Debtor agreed to the appointment of a Chapter 11 trustee, and Mr. Cohen was appointed as Chapter 11 trustee. ECF 123. Mr. Cohen was ultimately appointed as Chapter 7 trustee or Chapter 11 trustee in each of the Six Related Entities' case.

In the meantime, there was pressure on the parties to consummate the sale of the Northwest Parcel. The closing date was fast approaching, and if it was not sold by December 31, 2019, it would be subject to an auction. ECF 48.[8] All relevant parties recognized the Six Related Entities did not have the resources to repay the unauthorized DIP withdrawals. They also recognized that the sale of the Debtor's real estate would result in substantial equity that would be available to the Trust. The parties thus expressly recognized that the Trust's equity in the Debtor could be the source of the repayment of the DIP account withdrawals, provided Mr.

---

[8] On November 8, 2019, the Debtor filed a notice stating that the sale closed. ECF 148.

Cohen, in his capacity as Chapter 11 trustee of the Debtor's estate or later as Plan Administrator under the plan, determined the claims were valid.

It was in this context that the Debtor, the Trust and the Chapter 11 Trustee approached the plan confirmation hearing on October 28, 2019.  They agreed the sale should be consummated timely to preserve the value for the estate and to take advantage §1146.   They also agreed that the net proceeds should not be distributed to the Trust until, if at all, the newly appointed  Chapter 11 trustee could assess the Examiner's Report, conduct an investigation, make a determination of what claims should be asserted against the Trust and, importantly, recover on those claims, if valid, from the Debtor's sale proceeds.  As the Debtor itself stated prior to confirmation, the Trust *"may be required to pay some significant portion of the proceeds [from the sale] for the benefit of creditors in other cases."*  ECF 103 at p 3 (emphasis added). The Trustee expressly conditioned his agreement to go forward with the plan on controlling all funds, noting "the Examiner's Report submitted in the case raises concerns that claims of certain non-Debtor entities and individuals *may require payment prior to distributions to equity holders of the Debtor.*"  ECF 127 at ¶6 (emphasis added).

To accomplish these objectives, on October 11, 2019, the Debtor filed an amended plan that added the following provision to the section governing Delivery of Distributions: "*ANY FUNDS OTHERWISE PAYABLE TO EQUITY HOLDERS ARE TO BE HELD BY A CHAPTER 11 TRUSTEE TO BE APPOINTED HEREIN.*"  ECF 110 at §8.3 (emphasis in original).   In the plan and confirmation order, the Plan Administrator was given the authority to hold the Plan Funds, investigate the Examiner claims, and resolve the Plan Funds.  He was "vested with the rights and duties necessary to administer and carry out the purposes of the Plan."  ECF 143 at p. 11.  The Plan Administrator was required to retain the Plan Funds "pending [his]

determinations concerning appropriate distributions in the bankruptcy case." *Id.*

Significantly, there were simply no "determinations concerning appropriate distributions" to be

made by the Plan Administrator, or the Court, other than satisfaction of the claims identified by

the Examiner.  Other than real estate taxes and the deed of trust loan on the real property, both of

which would be paid at closing, the Debtor had one unsecured creditor holding a claim of

$772.50.  ECF 1 p. 15.  Proof of Claim No. 2-1.  In the absence of the need to satisfy the

Examiner claims, the sole creditor would be paid, any administrative claims would be paid, and

the Plan Funds would be distributed to the Trust in short order.  The court also modified the

order approving the sale to provide "[a]ll of the remaining net sale proceeds, if any, shall be held

by Merrill Cohen, in his capacity as Trustee or Plan Administrator and shall not be used for any

other purpose without prior Order of the Court."  ECF 139 at 2.

Section 1123(a) of the Bankruptcy Code allows a plan to impair the rights of equity

security holders.  The provisions of the confirmed plan bind the Debtor, Trust, and the Chapter

11 trustee, among others. 11 U.S.C. §1141(a).  The Fourth Circuit has recognized that a

confirmed plan of reorganization acts as a contract between the parties.  *First Union Commercial*

*Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),* 81 F.3d 1310,

1317 (4th Cir.1996).  Once confirmed, the plan, not Maryland law or the Debtor's operating

agreement, dictated the Trust's rights to obtain a distribution from the Plan Funds.

Here, the relevant parties to the plan – the Debtor, Trust, and Chapter 11 trustee, along

with the UST in furtherance of its statutory duties under 28 U.S.C. §586 – understood it to mean

that the Chapter 11 trustee, and after confirmation, the Plan Administrator, would retain the Plan

Funds for the express purpose of allowing the Trustee, or the Plan Administrator, to obtain

satisfaction of the claims identified by the Examiner, if they proved to be valid.  The Court confirmed the plan based on that understanding.

The Bank was not a creditor of the Debtor and not a party to the plan.  It points to plan provisions that were included in the original plan to the effect that the net proceeds from the sale would be distributed to the equity interest holder after all creditors were paid.  In doing so, it ignores the statements leading to the plan amendments, the express acknowledgements the parties made in the court filings, the plan amendments themselves, and the confirmation order. While it is true that the amendments were done with some haste given the time constraints and the context of the plan confirmation, they were sufficient to establish the agreement the parties reached in the plan, and as confirmed and understood by the court.

The charging order gives the Bank the right to receive "only" any distributions "that would otherwise be payable to" the Trust.  Md. Code Ann., Corps. & Ass'ns § 4A-607(c)(1).  That determination must be made by reference to the plan.  The plan requires that any distribution of Plan Funds to the Trust is subject to a substantial, as yet unfulfilled, condition.  The Plan Funds must first be used to satisfy claims the Examiner identified against the Trust, including the claims over the improper DIP account withdrawals in the Six Related Entities, as determined by the Plan Administrator.  The Plan Funds will not become "distributions that would otherwise be payable to" the Trust under Md. Code Ann., Corps. & Ass'ns § 4A-607(c)(1) until all of the claims against the Trust are resolved and the Plan Administrator --  and the Court  -- allows the funds to be distributed to the Trust.  The settlement effectuates the plan with respect to the improper DIP withdrawal claims.

The Bank points to the language in the settlement agreements that the Trust agrees to "contribute, from payments to which they otherwise would be entitled under the [Debtor's] Plan,

the amount . . . in order to repay amounts transferred from . . . DIP Account."  ECF 156-1 at p. 2,

¶2.  The Bank contends this means Plan Funds are effectively first being distributed to the Trust,

which then transfers them back to the Plan Administrator for delivery to the Six Related Entities.

The Bank argues that, because Plan Funds are first being distributed to the Trust, its charging

order requires the funds be distributed to it.  This claim is unavailing.

　　　　To the extent the language in the settlement agreements is inconsistent with the plan, the

court would deny the motion and require the Plan Administrator to enter into agreements

consistent with the plan.[9]  As established above, under the plan, no distributions were to be made

to the Trust until the claims identified by the Examiner were satisfied, as determined by the Plan

Administrator and approved by the court.

　　　　Further, the Bank reads too much into the language of the settlement agreements.  Each

agreement provides that "the [Debtor's] Plan Administrator may transfer to the Estate[s] [of the

Six Related Entities] the full amount of the Settlement Payment."  *See, e.g.*, ECF 156-1 at p. 2.

Thus, the funds are being transferred directly to the Six Related Entities by the Plan

Administrator.  They never leave his control, and the settlement payments effectuate the plan.

　　　　Finally, as stated above, but for the plan requirement that the Plan Funds be retained by

the Plan Administrator, the Plan Funds would be distributed to the Trust on account of its equity

interest under Maryland law or the original plan.  Under the amended plan, however, the claims

identified by the Examiner "*require payment prior to distributions to equity holders of the

Debtor.*"  ECF 127 at ¶6 (emphasis added).  Language in the settlement agreements that Plan

Funds would otherwise have gone to the Trust simply recognizes the fundamental distribution

scheme under limited liability company law in the absence of the amended confirmed plan.

---

[9] Although consensual resolutions are always preferred, the consent of the Trust is not necessary for the proposed use of the Plan Funds by the Plan Administrator.  The plan dictates the result.

**Conclusion**

For the foregoing reasons, the Application to Compromise Controversy will be granted.

A separate order will issue.

cc:

David W. Cohen
Law Office of David W. Cohen
1 N. Charles St., Ste. 350
Baltimore, MD 21201

Alan Grochal
Tydings & Rosenberg
One East Pratt Street
Baltimore, MD 21202

Christopher Abramson
c/o Newmark Knight Frank
One East Pratt Street Suite 805
Baltimore, MD 21202

G. Richard Gray
Gray & Associates, LLC
1355 Briarhill Lane
Crownsville, MD 21032

S. Bruce Jaffe
8600 Snowden River Pkwy, Suite 207
Columbia, MD 21045

AN&J Family Trust
8600 Snowden River Pkwy, Suite 207
Columbia, MD 21045

The Sanford Companies, Inc.
8600 Snowden River Pkwy, Suite 207
Columbia, MD 21045

Vogel Engineering + Timmons Group
3300 N. Ridge Road, Suite 110
Ellicott City, MD 21043

Augustus T. Curtis
Merrill Cohen

Cohen, Baldinger & Greenfeld, LLC
2600 Tower Oaks Boulevard, Suite 103
Rockville, MD 20852

L. Jeanette Rice
Office of the U. S. Trustee
6305 Ivy Lane Ste. 600
Greenbelt, MD 20770

TSC Dorsey Run Road - Jessup, LLC
8600 Snowden River Parkway
Columbia, MD 21046

**END OF MEMORANDUM**